IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TERENCE BARRY,

      Plaintiff,

vs.                   No. 06-2638-JPM-tmp

STANLEY NORRIS, et al.,

      Defendants.

ORDER CORRECTING THE DOCKET
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

On September 26, 2006, Plaintiff Terence Barry, who was, at the time, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983. (Docket Entry ("D.E.") 1.) Plaintiff filed amendments to his complaint on November 13, 2006 (D.E. 5) and December 28, 2006 (D.E. 7). The Court issued an order on February 27, 2007 that, inter alia, granted leave to amend, dismissed certain claims and parties, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted, and directed that the Clerk issue process for, and the marshal to effect service on, the remaining Defendants, Inmate

Relations Coordinator ("IRC") Stanley Norris and the State of Tennessee. (D.E. 8.)

On April 30, 2007, Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (D.E. 16.) The Court issued an order on March 13, 2008 that dismissed the complaint against the State of Tennessee and otherwise denied the motion. (D.E. 68.) It does not appear that Defendant Norris has answered the complaint.

On February 29, 2008, Defendants filed a motion for summary judgment, supported by a statement of undisputed facts; a legal memorandum; the affidavits of Stanley Norris, Wayne Douglas, Norris Hayles, Sandra Mooney, Christopher Stewart, and Jackie Midkiff; and the deposition of Plaintiff, which was taken on December 13, 2007. (D.E. 62.)[1] Defendants filed the affidavits of Jackie Midkiff on March 3, 2008 (D.E. 64) and of Christopher Stewart on March 4, 2008 (D.E. 67). Because it did not appear that Plaintiff had responded to the motion, the Court issued an order on April 17, 2008 directing Plaintiff to show cause, within eleven (11) days, why the summary judgment motion should not be granted. (D.E. 79.) Plaintiff filed a response to the show cause order on April 25, 2008, entitled "Motion in Reconcideration [sic] of Opposition Summary Judgment" (D.E. 83), which, on examination,

---

[1] The motion for summary judgment on behalf of the State of Tennessee is moot, as the Court subsequently granted the State's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (See D.E. 68.) At the time the summary judgment motion was filed, the State of Tennessee was a party to this action.

appears to be substantially similar to a document filed on February 26, 2008 (D..E 61), which the Clerk docketed as a motion.[2]

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In

---

[2] The Clerk is directed to terminate the document filed by Plaintiff on February 26, 2008 from the list of pending motions in this case, because it appears to have been intended as a response to the summary judgment motion, rather than an application for relief.

considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (same).[3]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote

---

[3]    Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." <u>Cacevic v. City of Hazel Park</u>, 226 F.3d 483, 488 (6th Cir. 2000); <u>see also</u> <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 422 (6th Cir. 1998); <u>Plott v. General Motors Corp.</u>, 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. <u>Wallin v. Norman</u>, 317 F.3d 558, 564 (6th Cir. 2003).

The Court's task in evaluating this motion for summary judgment is complicated by Plaintiff's failure to submit any admissible evidence in response. In his response to the summary judgment motion, which was filed on April 25, 2008, Barry argues that, in assessing the merits, it is necessary to consider "a wide variety of materials . . . including motions, affidavits, my deposition hearing and interrogatories and production of documents and things" (D.E. 83 at 1 (irregular capitalization omitted)), and he also submitted a witness list (id. at 2) and asserted that the credibility of his witnesses must be evaluated by a jury (id. at 1). Barry does not explain his failure to present any of the materials he contends are necessary to evaluate his claim, including the affidavits of his witnesses, and he has not submitted a Rule 56(f) affidavit.[4] Plaintiff cannot avoid a summary judgment by promising to produce admissible evidence at trial. Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995) ("Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to "put up or shut up" on a critical issue.'"). Although the Court ordinarily would consider Plaintiff's original complaint, which was sworn to under penalty of perjury and is the functional equivalent of an affidavit, Smith v. Campbell, 250 F.3d

---

[4]     Plaintiff does refer to a motion to compel he contends he filed concerning the failure of Defendant Norris to respond to interrogatories. (Id. at 4.) That motion was filed on November 20, 2007 (D.E. 44), and counsel for Defendant Norris filed a response on December 27, 2007 stating that a copy of the response was mailed to Plaintiff on December 14, 2007 (D.E. 55). Because of that representation, the Court issued an order on July 16, 2008 denying the motion to compel. (D.E. 96.)

1032, 1036 (6th Cir. 2001); Weberg v. Franks, 229 F.3d 514, 526 n.14 (6th Cir. 2000), most of the factual allegations are contained in the attached administrative grievances, which were not executed under penalty of perjury and, therefore, cannot be considered as evidence. Plaintiff's two amendments to the complaint (D.E. 5 & 7) also will not be considered in evaluating Defendants' motion for summary judgment, because they were not executed under penalty of perjury. Therefore, the only admissible evidence supporting Plaintiff's claims is found in his deposition, taken on December 13, 2007, which was submitted by Defendants. (D.E. 62-9 & 62-10.)

In the order issued on February 27, 2007, the Court has summarized Plaintiff's factual allegations, as presented in the complaint and its amendments, as follows:

On or about August 10, 2006, Plaintiff alleges that Defendant Norris verbally harassed him and other inmates. Plaintiff says he confronted Norris at that time and, again, later that evening while Plaintiff was performing his prison job. Norris allegedly threatened Plaintiff that he "would be after [Plaintiff's] job next if [he] didn't get out of his face." That evening, Plaintiff was issued a disciplinary write-up, which he asserts was in retaliation for standing up to Norris. It does not appear that a disciplinary hearing was held. He also contends Norris placed falsified "contact notices" in his file, which appear to be notes, dated prior to the incident in question, reflecting complaints by Plaintiff's work supervisor that Plaintiff was lazy.

The documents attached to the complaint indicate that Plaintiff filed a grievance against Norris on or about August 14, 2006. Plaintiff was terminated from his prison job at Norris's request on August 21, 2006. The stated explanation for Plaintiff's termination was "Poor Job Performance." Plaintiff asserts that Norris subsequently hired ten white inmates, so there was no

room on the roster for Plaintiff. Subsequently, on September 8, 2006, Defendant Norris informed Plaintiff that he intended to oppose his release on parole.

. . . .

On or about December 7, 2006, Defendant Norris and another individual who is not a party to this action questioned Plaintiff about "unauthorized financial obligation/transaction" [sic] and searched his cell. No evidence of wrongdoing was discovered, but the other officer placed Plaintiff in segregation. Plaintiff contends this action was taken in retaliation for the grievance he filed against Norris in August, 2006. When the investigation was complete, Defendant Norris allegedly prevented Plaintiff's removal from segregation.

(D.E. 8 at 5-6 (footnote omitted).) In that order, issued on February 27, 2007, the Court dismissed, <u>sua</u> <u>sponte</u>, any constitutional claim arising from Plaintiff's termination from his prison job and from Defendant Norris's alleged threats and verbal harassment of Plaintiff. (<u>Id.</u> at 7-8, 10.) The order stated that "[t]he only remaining claims in this action are asserted against Defendant Norris and the State of Tennessee for racial discrimination and retaliation." (<u>Id.</u> at 10 (footnote omitted).)

The Court finds the following facts to be undisputed for purposes of this motion:[5]

---

[5]   The Court's task is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides that "the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." Plaintiff has not responded to Defendants' statement of undisputed facts, and he also has not submitted any affidavits or portions of the record. Nonetheless, the Court has attempted, by examining Plaintiff's deposition, to discern the extent to which Plaintiff is able to dispute the proposed factual findings submitted by Defendants.

1.  Terence Barry's work performance as a sorter at WTSP in Unit 8A was very poor. (Affidavit of Sandra Mooney, sworn to on Feb. 28, 2008 ("Mooney Aff."), ¶¶ 3-5 (D.E. 62-6); Affidavit of Jackie Midkiff, sworn to on Mar. 3, 2008 ("Midkiff Aff."), ¶¶ 3-4 (D.E. 64); Affidavit of Christopher Stewart, sworn to on Mar. 4, 2008 ("Stewart Aff."), ¶¶ 3-4 (D.E. 67); Affidavit of Stanley Norris, sworn to on Feb. 28, 2008 ("Norris Aff."), ¶ 5 (D.E. 62-5).)

2.  IRC Norris wrote contact notes documenting the poor work performance. (Norris Aff., ¶ 6 & attachments.)[6]

3.  Officers Mooney and Stewart confirm the contact notes' contents. (Mooney Aff., ¶ 5; Stewart Aff., ¶ 3.)

4.  Inmate Barry admits that, on June 6, 2006, Officer Stewart criticized his work performance. (Barry Dep. at 38-40 (D.E. 62-9 at 38-40.)

---

[6] A contact note for May 29, 2006 at 8:45 a.m. stated: "I/M BARRY STANDING AROUND NOT WORKING. TOLD I/M IF HE DID NOT WANT TO WORK ADVISE IRC NORRIS. THIS INMATE SEEMS TO BE VERY LAZY. TOLD INAMTE [sic] IF HE DID NOT IMPROVE THAT IRC NORRIS WOULD HAVE NO CHOICE BUT TO REQUEST A JOB-DROP. INMATE DID NOT SEEM TO CARE." (D.E. 62-5 at 3.)

A contact note for June 6, 2006 at 8:00 p.m. stated: "C/O STEWART INFORMED IRC THAT BARRY JUST STANDS AROUND OR HANGING ON DOOR. DOES NOT REALLY WANT TO USE HIM. HE SAID THAT HE WILL BUT IS VERY HAPPY WITH RAMBO AND BELEW. I SPOKE WITH INMATE ABOUT BEHAVIOR. HE SAID THAT C/O STEWART DOES NOT LIKE HIM. BOTTOM LINE IS THAT THIS INMATE IS VERY SLOW AND LAZY. EXPLAINED TO HIM THAT HE IS EXPECTED TO WORK AND NOT WATCH THE OTHERS. INMATE SAID TO DO WHAT I HAVE TO DO. IRC NORRIS WILL REQUEST A JOB DROP IF HIS WORK HABITS DO NOT CHANGE. HIS WORK PERFORMANCE I [sic] VERY SUB-PAR." (Id. at 4.)

A contact note for July 12, 2006 at 9:15 a.m. stated: "C/O MOONEY INFORMED IRC THAT I/M BARRY JUST STANDING AROUND LETTING OTHER TWO SORTERS WORK. . . . JUST WATCHING. SPOKE WITH INMATE REGARDING WHAT C/O MOONEY HAD WITNESSED. HE SAID THAT WE WERE JUST PICKING ON HIM. THIS INMATE IS VERY LAZY AND IT IS EVIDENT THAT HE LIKES TO STAND AROUND THAT WATCH OTHERS WORK. IRC NORRIS WILL BE ASKING FOR A JOB-DROP IF THIS BEHAVIOR DOES NOT CEASE." (Id. at 5.)

A contact note for August 10, 2006 at 6:35 p.m. stated: "ON THE ABOVE DATE AND APPROXIMATE TIME IRC NORRIS DID OBSERVE I/M T. BARRY #358202 IN 8A-38 CELL. I/M BARRY WAS SUPPOSE TO BE WORKING AS A SORTER. HE IS CHARGED WITH OOP. IRC NORRIS IS REQUESTING A JOB DROP. PLEASE NOTE THAT C/O MIDKIFF HAD TOLD HIM ONCE BEFORE WHEN HE WAS FOUND AT 8A-35. ALL WORKERS HAVE BEEN INSTRUCTED NOT TO 'HANG ON DOORS' THEREFORE, I/M BARRY "358202 IS CHARGED WITH OOP. IRC NORRIS IS HIS SUPERVISOR AND IS ASKING FOR A JOB DROP." (Id. at 7.)

5. IRC Norris submitted a request for job dismissal to Job Coordinator Norris Hayles, and Mr. Hayles terminated inmate Barry from his job as a sorter due to inmate Barry's poor work performance. (Norris Aff., ¶¶ 8-9; Affidavit of Norris Hayles, sworn to on Feb. 26, 2008 ("Hayles Aff."), ¶¶ 5-7 (D.E. 62-7).)

6. On December 6, 2006, Unit Manager Wayne Douglas placed inmate Barry in non-contact status, due to receipt of a written communication threatening the life of inmate Barry. (Undated Affidavit of Wayne Douglas ("Douglas Aff."), ¶¶ 4-5 (D.E. 62-8).)

7. Unit Manager Douglas removed inmate Barry from non-contact status when he determined that inmate Barry's life was no longer in danger. (Id., ¶ 6.)

8. It was Unit Manager Douglas' decision to place and remove inmate Barry from non-contact status; IRC Norris was not involved therein. (Id., ¶ 7; Norris Aff., ¶¶ 11-12.)

9. IRC Norris did not racially discriminate against Terence Barry prior to August, 2006. (Barry Dep. at 50 (D.E. 62-10 at 10).)

10. IRC Norris did not racially discriminate against Barry after August, 2006. (See Barry Dep. at 59 (D.E. 62-10 at 19).)

11. IRC Norris did not take inmate Barry back at the work site after he was terminated, not as a result of racial animus, but because he was terminated from the job. (Barry Dep. at 57-59 (D.E. 62-10 at 17-19).)

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." Harbin-Bey v. Rutter, 420 F.3d 571, 579 (6th Cir. 2005).

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a

> causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); see also Scott v. Churchill, 377 F.3d 565, 569 (6th Cir. 2004) (same); Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." Smith, 250 F.3d at 1037.

In their summary judgment motion, Defendants do not address Plaintiff's claim that Defendant Norris issued him a disciplinary write-up for being out of place, in retaliation for Plaintiff's objection to the alleged verbal harassment. (See Barry Dep. at 32-34 (D.E. 62-9 at 32-34).) The filing of a nonfrivolous grievance is protected conduct under the First Amendment. Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Because the alleged verbal harassment is not actionable, see supra p. 8, any grievance concerning that harassment would be frivolous. Herron, 203 F.3d at 415; see Jackson v. Kronberg, 111 F. App'x 815, 819 (6th Cir. 2004) (grievance that corrections officer has a spider-web tattoo that serves as an "Aryan Nation symbol" not grievable so the filing of the grievance

11

is not protected conduct); <u>Ziegler v. State of Mich.</u>, 90 F. App'x 808, 810 (6th Cir. 2004); <u>Henley v. Pitcher</u>, 20 F. App'x 396, 397 (6th Cir. 2001); <u>cf.</u> <u>Smith v. Craven</u>, 61 F. App'x 159, 162 (6th Cir. 2003) (inmate did not engage in protected conduct by litigating loss of property claim against prison in state court because such a claim is not encompassed within an inmate's First Amendment rights). Because Plaintiff had no First Amendment right to file a grievance challenging Defendant Norris's allegedly offensive remarks, it necessarily follows that he had no First Amendment right directly to confront Norris about the alleged remarks.[7]

Moreover, the second <u>Blatter</u> element is not satisfied. Although a disciplinary charge sometimes constitutes an adverse action, <u>Scott v. Stone</u>, 254 F. App'x 469, 472 (6th Cir. 2007); <u>Brown v. Crowley</u>, 312 F.3d 782, 789 (6th Cir. 2002),[8] in this case Plaintiff never appeared before the disciplinary board (Barry Dep. at 34 (D.E. 62-9 at 34)), the disciplinary "disappeared" (<u>id.</u> at 32), and Plaintiff concedes that no adverse action happened to him

---

[7]    Plaintiff filled out a grievance form concerning the remarks on August 11, 2006, and the grievance was received by the grievance clerk on August 14, 2006. (D.E. 1 at 8.) The disciplinary write-up cannot have been issued in retaliation for that grievance because it is undisputed that the write-up was prepared on August 10, 2006 and served on Plaintiff on August 11, 2006. (Barry Dep. at 24, 30-31 (D.E. 62-9 at 24, 30-31).)

[8]    This case is distinguishable from <u>Scott</u> and <u>Brown</u>, where the prisoners were charged with "major misconduct." The Tennessee Department of Correction ("TDOC") currently classifies the offense of "Out of Place" as a Class C disciplinary offense, the least serious level of rule infractions. TDOC, Administrative Policies and Procedures, Index No. 502.05, ¶ VI.A.45 (Oct. 1, 2007).

because of the disciplinary charge (id. at 35). The testimony of Defendant Norris is consistent:

> On August 10, 2006, inmate Barry was out of place and not at his assigned work station. As the unit was a segregated unit, inmate Barry being out of place was a security threat. I did a write-up for the disciplinary of out-of-place for inmate Barry. . . . Inmate Barry was not removed from his cell. I decided not to pursue the disciplinary because of its potential harm to inmate Barry's opportunity to obtain parole release.

(Norris Aff., ¶ 7.)[9]

The Supreme Court has recognized that "[t]here is, of course[,] a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977); see also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (recognizing that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations" and that the courts may "weed out" such "inconsequential actions"); Dean v. Conley, 20 F. App'x 294, 295 (6th Cir. 2001) ("The Constitution . . . does not provide an avenue of redress for de minimis events in the life of an inmate."); A'la v. Cobb, No. 98-5257, 2000 WL 303014, at *2 (6th Cir. Mar. 14, 2000) ("[S]ome level of significance is required in order for the actions of prison officials to implicate constitutional concerns. De minimis events simply do not state constitutional claims."). The

---

[9] In his deposition, Plaintiff refers, generally, to being locked up (Barry Dep. at 31 (D.E. 62-9 at 31)), but it appears he is referring to the incident in December, 2006 in which he was moved to non-contact status. Plaintiff's claim that that action was taken in retaliation for the verbal confrontation on August 10, 2006 will be addressed infra.

filing of a disciplinary write up for a minor infraction, which was withdrawn before any action was taken on it, is a de minimis action that does not rise to the level of an adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct.

As for Plaintiff's claim that he was terminated from his prison job in retaliation for the filing of a grievance about Defendant Norris's verbal harassment, Defendants do not contest the first two Blatter elements;[10] instead, they argue that Plaintiff cannot establish causation because he was terminated for poor performance. (D.E. 62-2 at 4.) Plaintiff contends that, in retaliation for a verbal confrontation with Defendant Norris on August 10, 2006, he was terminated from his prison job on August 21, 2006. (Barry Dep. at 11-12, 15-18 (D.E. 62-9).) The undisputed evidence is that Plaintiff's job performance was poor. (Factual Finding ("FF") 1.) Three contact notes entered into the TDOC computer system more than a month prior to the alleged confrontation between Plaintiff and Defendant Norris reflect dissatisfaction with Plaintiff's job performance. (FF 2 & n.5.) Three witnesses have submitted affidavits attesting to Plaintiff's unsatisfactory job performance, and two of those witnesses stated

---

[10] In his affidavit, Defendant Norris stated that "[t]he conversation alleged by inmate Barry to have occurred between us on August 10, 2006 did not occur." (Norris Aff., ¶ 10.) Nonetheless, Defendants apparently recognize that Plaintiff has raised a triable issue of fact on that issue, as it is not addressed in their brief. For the reasons discussed previously, see supra pp. 11-12, it is unlikely that Plaintiff's grievance constituted protected conduct.

that they informed Defendant Norris, Plaintiff's supervisor, prior to the events at issue, that Plaintiff was not doing his job. (Mooney Aff., ¶¶ 4-5; Midkiff Aff., ¶¶ 3-4; Stewart Aff., ¶¶ 3-4.) The observations made by each of these witnesses are similar: Plaintiff would stand around or hang on cell doors, watching the two other sorters perform their duties. (Id.; see also Norris Aff., ¶¶ 4-6.) Plaintiff has admitted that, on June 6, 2006, Officer Stewart criticized his job performance. (FF 4.)[11] Plaintiff does not address this evidence.[12]

Under TDOC policy, an inmate may be terminated from his prison job for poor performance:

> 2.    The job coordinator has the authority, subject to the warden/designee(s) review/approval, to consider, approve or deny all dismissal requests or recommendations. . . .

> 3.    The job coordinator shall notify inmates and supervisors, in writing, of all terminations.

---

[11] At his deposition, Plaintiff testified that he did not have a conversation with Officer Mooney about his job performance (Barry Dep. at 40-41 (D.E. 62-9 at 40, 62-10 at 1)), but he presents no evidence that she did not complain to Defendant Norris or that Defendant Norris may have backdated the contact note.

[12] Plaintiff has said that the complaints that were made about his job performance were "not true" (Barry Dep. at 35 (D.E. 62-9 at 35)), but he has not come forward with admissible evidence that his supervisors were happy with his performance prior to the events of August 10, 2006. Later, Plaintiff seemed to concede that the negative comments of Officers Mooney and Stewart were genuine but that Defendant Norris's negative contact note was the third note required to warrant his termination. (Id. at 52 (D.E. 62-10 at 12).) After being shown the relevant TDOC policy, Plaintiff conceded that there was no requirement that an inmate receive three negative contact notes before he can be terminated for poor performance. (Id. at 55-56 (D.E. 62-10 at 15-16).) Plaintiff's assertion that he did not see the unfavorable contact notes, made prior to August 10, 2006, when an officer showed him the computer entries relating to his job performance in July, 2006 (id. at 24-30 (D.E. 62-9 at 24-30)), is insufficient to create a triable issue as to whether there were, in fact, unfavorable contact notes in the computer prior to August 10, 2006.

4. Inmates receiving either a disciplinary or non-disciplinary dismissal may not be reassigned to the same program/area without the prior agreement of the supervisor. If the supervisor disagrees with a proposed reassignment, the warden designee shall make the decision.

. . . .

9    Non-Disciplinary Dismissals or Demotions

Documentation of the problem and the attempts to correct it shall be provided. Program Notes LJEC and/or Contact Notes LCDG (IJOB Inmate Job Contact) shall be used for this documentation. . . . Reasons may also be documented on Request for Job Dismissal, CR-3054. Reasons include, but are not limited to:

. . . .

b.    Inmates may receive a non-disciplinary dismissal upon recommendation of the supervisor or other appropriate staff if it is felt that the inmate's continued presence in the work area is detrimental to the morale of the work force or the productive operation of the area, or to the security and safety of the institution. Specific reason(s) shall be documented. . . .

g.    A documented pattern of job-related rule infractions may be grounds for a supervisor to request a non-disciplinary dismissal for an inmate.

TDOC, Administrative Policies and Procedures, Index No. 505.07, ¶ VI.H (Mar. 15, 2003) (D.E. 62-7 at 16-18). Plaintiff was terminated in accordance with this policy. For all the foregoing reasons, Plaintiff has not come forward with sufficient evidence to raise a triable issue as to whether he was terminated from his prison job in retaliation for his exercise of his First Amendment rights.

Plaintiff also contends that his transfer to non-contact status in December, 2006 was made in retaliation for his verbal confrontation with Defendant Norris and his subsequent grievance. (Barry Dep. at 42-46 (D.E. 62-10 at 2-6).) Unit Manager Douglas has submitted an affidavit stating that he placed Plaintiff in non-contact status because he received a letter from another inmate threatening his life. (FF 6-8.) According to the letter, Plaintiff had sold other inmates fake cocaine. (D.E. 62-8 at 3.) Plaintiff has not presented any admissible evidence that he was placed on non-contact status in December, 2006 because of the altercation with Norris, and resulting grievance, four months previously.

The Court GRANTS Defendants' motion for summary judgment on the retaliation claims.

Plaintiff also asserts that Defendant Norris discriminated against him because of his race due to the fact that, after his termination, Defendant Norris did not rehire him and, instead, hired white inmates. (Barry Dep. at 47-48 (D.E. 62-10 at 7-8).) Specifically, Plaintiff alleges that,

> [w]hen [Norris]—when he terminated me from my job and he hired them other inmates who basically just got over there. I had to wait about a year to get on the work thing, and he moved these guys up in front of me trying to show me that I [sic] got the power to move people around and place them in working positions and not [me].

(Barry Dep. at 47-48, 49 (D.E. 62-10 at 7-8, 9).) Plaintiff was terminated on August 21, 2006, see supra p. 14, and the white

inmates were allegedly hired on August 23, 2006 (Barry Dep. at 48 (D.E. 62-10 at 8)).

To succeed on a race-based equal protection claim, Plaintiff must come forward with evidence that he was the victim of purposeful discrimination on account of his race. <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987); <u>see also</u> <u>Henry v. Metro. Sewer Dist.</u>, 922 F.2d 332, 335 (6th Cir. 1990). Plaintiff has not satisfied that standard.

Plaintiff concedes that Defendant Norris did not discriminate against him before August, 2006. (Barry Dep. at 50-51 (D.E. 62-10 at 10-11).) Plaintiff also admits that Defendant Norris did not discriminate against him after August, 2006. (<u>Id.</u> at 57 (D.E. 62-10 at 17).) He concedes that Defendant Norris did not recommend him for another job because he had had him terminated from his previous job. (<u>Id.</u> at 57-58, 59 (D.E. 62-10 at 17-18, 19).)[13] Instead, Plaintiff contends that, by hiring white inmates after his termination, Defendant Norris was discriminating against other black inmates who had been on the job roster for a longer time than the inmates who were hired. (<u>Id.</u> at 57-63 (D.E. 62-10 at 17-23).)

---

[13]  As the discussion of the retaliation claim makes clear, <u>see</u> <u>supra</u> pp. 14-17, Plaintiff also does not contend that Defendant Norris had him terminated because of his race.

Plaintiff has no standing to sue for alleged racial discrimination in the hiring of his replacement. The doctrine of prudential standing

> embodies "judicially self-imposed limits on the exercise of federal jurisdiction" . . . . Although [the Supreme Court has] not defined the prudential dimensions of the standing doctrine, [it has] explained that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."

Elk Grove Unif. Sch. Dist. v. Newdow, 542 U.S. 1, 11-12 (2004) (citations omitted). Pursuant to Fed. R. Civ. P. 17(a), "[e]ach action shall be prosecuted in the name of the real party in interest." A claim under 42 U.S.C. § 1983 is personal to the injured party, Jaco v. Bloechle, 739 F.2d 239, 241 (6th Cir. 1984), and only the injured party has standing to sue, Bryant v. U. S. Attorney General, No. 1:06-CV-64, 2006 WL 2612730, at *3 (E.D. Tenn. Sept. 8, 2006); see also Elk Grove Unif. Sch. Dist., 542 U.S. at 15-17 (noncustodial parent lacks standing to challenge recitation of the Pledge of Allegiance at his daughter's school). Plaintiff does not have standing to bring a claim that Defendant Norris discriminated against any other inmate.

The Court GRANTS Defendants' motion for summary judgment on the claim of racial discrimination. The complaint is DISMISSED

WITH PREJUDICE. All pending motions are DENIED as moot. The Clerk is directed to enter judgment for Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision _in_ _forma_ _pauperis_, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed _in_ _forma_ _pauperis_, whether the appeal is frivolous. <u>Floyd v. U. S. Postal Serv.</u>, 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken _in_ _forma_ _pauperis_ if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal _in_ _forma_ _pauperis_ must obtain pauper status under Fed. R. App. P. 24(a). <u>See</u> <u>Callihan v. Schneider</u>, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party was permitted to proceed _in_ _forma_ _pauperis_ in the district court, he may also proceed on appeal _in_ _forma_ _pauperis_ without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed _in_ _forma_ _pauperis_ in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. <u>Coppedge v. U. S.</u>, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. <u>Id.</u> at 445-46. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but that it has sufficient merit to support an appeal <u>in forma pauperis</u>. <u>See Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith, and Plaintiff may not proceed on appeal <u>in forma pauperis</u>. Leave to proceed on appeal <u>in forma pauperis</u> is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

SO ORDERED this 25th day of September, 2008.


S/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE